United States District Court
Southern District of Texas
**ENTERED**
August 20, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSHUA JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:17--01568 |
| | § | |
| THE WESTFILED CORPORATION, INC., | § | |
| THE WESTFIELD TAX & FINANCIAL | § | |
| MANAGEMENT SERVICE, LLC, AND | § | |
| MICHAEL R. PHILLIPS, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM AND RECOMMENDATION

Before the Court upon referral from the District Judge is Defendants' Motion for Summary Judgment (Document No. 33), Plaintiff's Response (Document No. 34), Defendants' Reply to Plaintiff's Response (Document No. 35), and Plaintiff's Surreply (Document No. 36). Having considered the motion for summary judgment, the responses/replies, the summary- judgment evidence, and the applicable law, the Magistrate Judge concludes that Defendants' Motion for Summary Judgment should be DENIED.

I. Background

Plaintiff, Joshua Johnson ("Johnson" or "Plaintiff"), brings the instant action, alleging that Defendants, The Westfield Corporation, Inc. ("The Westfield Corp."), The Westfield Tax & Financial Management Services, LLC, ("Westfield Tax"), and Michael R. Phillips ("Phillips")(collectively "Defendants"), violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.* and the Texas Minimum Wage Act ("TMWA"), TEX.LAB.CODE ANN § 62.001 *et. seq.,* by failing to properly compensate him for his work as Operations Manager from on or about

July 27, 2015 to February 2, 2016. He alleges that Defendants violated the FLSA by failing to pay him overtime, at one and a half times his hourly rate, for the time he worked more than forty hours per week, and often failed to pay minimum wage. Plaintiff alleges he regularly worked fifty to sixty hours per week. Plaintiff further alleges that Defendants' conduct was willful. *See* Original Complaint (Document No. 1, p. 6-7). Plaintiff further alleges that Defendants agreed to pay him a yearly salary of $50,000 with a $5,000 bonus, but breached their agreement by paying him only $2,023.00 in total compensation for over six months of employment. (Document No. 1, p. 7-8). Defendant Westfield Corporation and Defendant Michael Phillips generally deny that they are proper parties to the instant action. The Defendants also generally deny that they violated any provision of the FLSA or TMWA and further deny that they acted willfully in failing to pay Plaintiff in accordance with the FLSA. In addition, Defendants generally deny that they entered into a verbal or written contract with Plaintiff. *See* Defendants' First Amended Answer (Document No. 32).

Defendants provide financial management and tax preparation services in the greater Houston area. (Document No. 1, ¶ 20). From July 27, 2015 until February 2, 2016, Johnson was employed as Operations Manager. (Document No. 1, ¶ 28). Plaintiff alleges that The Westfield Corp. "is an entity engaged in interstate commerce or in the production of goods for interstate commerce" and that Defendant Michael R. Phillips is "an individual engaged in interstate commerce or in the production of goods for interstate commerce as an employer. He had acted, directly or indirectly, in the interest of an employer with respect to Plaintiff." (Document No. 1, ¶ 8 & 10). Defendants The Westfield Corp. and Phillips have moved for summary judgment, arguing that Plaintiff performed work exclusively for Westfield Tax and that Plaintiff has failed to offer any evidence to support his claim that either qualify as an "employer" under the FLSA. Defendants further contend

2

that Plaintiff has failed to offer any evidence to support his claim that Defendants violated the FLSA or TMWA by failing to pay overtime or unpaid minimum pay. They further argue that Plaintiff was subject to an exemption under the FLSA overtime provisions. Lastly, Defendants argue that Plaintiff has failed to offer any evidence to support the existence of a valid contract.

II. Applicable law

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The substantive law governing the claim at issue determines which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine if the evidence presents an issue "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Id.* at 250. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). The moving party bears the burden of identifying evidence that no genuine issue of material fact exists, *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986), and the court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 587 (1986). Where the nonmovant bears the burden of proof at trial, the movant need only point to the absence of evidence supporting an essential element of the nonmovant's case; the movant does not have to support its motion with evidence negating the case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the movant succeeds, the nonmovant can defeat the motion for summary judgment only by identifying specific evidence of a genuine issue of material fact, *see Anderson*, 477 U.S. at 248-49, but that evidence need not be in a form that would be

admissible at trial. *See Celotex*, 477 U.S. at 324. In ruling on summary judgment, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

III. Evidentiary Objection

Attached to Plaintiff's Response to Defendants' Motion for Summary Judgment is the Affidavit of Plaintiff. (Document No. 34-1). Defendants argue that Plaintiff's affidavit is self-serving and should not be considered in its entirety, as it is not competent evidence and is hearsay. Plaintiff responds that these objections are without merit. According to Plaintiff, the Affidavit is based on his personal knowledge and Defendants' objection is overly broad as it does not identify which facts alleged in the Affidavit they find objectionable.

As Plaintiff's Affidavit makes clear, it is based on his personal knowledge and is not hearsay. The Court may consider hearsay at the summary judgment state if the hearsay could be reduced to a form admissible at trial. *See D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 208 (5th Cir. 2018); *Arora v. Starwood Hotels & Resorts Worldwide, Inc.*, 294 F.App'x 159, 161 (5th Cir. 2008). The affidavit satisfies Federal Rules of Civil Procedure 56(c)(4), which allows a party to support an assertion by an affidavit so long as it is "made on personal knowledge, sets out facts that would be admissible in evidence, and shows that affiant or declarant is competent to testify on the matters stated." Personal knowledge can be reasonably inferred "from their positions and the nature of their participation in the matters to which they swore," and if it is reasonably within the person's "sphere of responsibility," the requirement is met. *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005) (citing *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990)). "Conclusional allegations and denials, speculation, and unsupported assertions are insufficient to

avoid summary judgment." *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011). Having reviewed Plaintiff's affidavit, the Court determines that any hearsay could be reduced to a form admissible at trial and that the affidavit demonstrates Plaintiff's personal knowledge, and does not set forth ultimate or conclusory facts and conclusions of law. Defendants' evidentiary objections to Plaintiff's summary evidence are overruled.

IV. Discussion

A. Defendants have failed to establish that they are not employers under the FLSA

The FLSA requires employers to pay time and a half for each hour that an employee works in excess of 40 hours per week, 29 U.S.C. § 207(a), and creates a cause of action for employees against employers that violate these requirements. 29 U.S.C. § 216(b). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Where both a corporation and a corporate officer satisfy the definition of "employer" under the FLSA, the officer and the corporation are jointly and severally liable for unpaid overtime wages. *See Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 251 (5th Cir. 2012)("The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies.").

To determine whether there is an employer/employee relationship, the Court applies the "economic realities" test described by the Fifth Circuit in *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012). *Gray* instructs that, to determine whether the alleged employer had operational control over the employees, the Court considers whether the evidence shows that the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work

schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 355 (quoting *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir.2010). No single factor is dispositive, and "a party need not establish each element in every case." *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014). While each factor need not be present to establish an individual's employer status under the FLSA, the Fifth Circuit in *Gray* observed that "individuals ordinarily are shielded from personal liability when they do business in a corporate form, and, it should not lightly be inferred that Congress intended to disregard this shield in the context of the FLSA." *Gray*, 678 F.3d at 356-57 (quoting *Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 677 (1st Cir. 1998). Simply put: the Fifth Circuit has "decline[d] to adopt a rule that would potentially impose individual liability on all shareholders, members, and officers of entities that are employers under the FLSA based on their position rather than the economic reality of their involvement in the company." *Id.* at 357.

Here, as explained below, Defendant The Westfield Corp. and Defendant Phillips have failed to satisfy their burden on summary judgment[1] to demonstrate that there either is no genuine issue of material fact, or there is an absence of evidence regarding whether The Westfield Corp. or Dr. Phillips are employers as defined under the FLSA. Defendants point to Plaintiff's testimony that he received a 1099 from Westfield Tax & Financial Management Service, LLC, and that the Statement of Wages and Potential Benefit Amounts that Plaintiff received from unemployment identified The Westfield Tax & Financial Management Service, LLC as his employer.

But in response, Plaintiff has submitted his affidavit, which states in pertinent part:

---

[1] All the evidence for and against The Westfield Corp. or Dr. Phillips' status as an "employer" is contained in the December 13, 2018, deposition of Plaintiff (Document No. 35-1, at 3 & 5); and Plaintiff's Affidavit. (Document No. 34-1).

6

2. In the summer of 2015, I was introduced to Defendant Michael R. Phillips ("Phillips"). Mr. Phillips was exploring the possibility of starting a company that focused on preparing taxes for individuals and companies. At the time, I had several years of experience in this field, so Mr. Phillips and I discussed the possibility of me becoming the Operations Manager for what later became known as The Westfield Tax & Financial Management Service, LLC ("Westfield Tax.").

3. As a result of my discussions with Mr. Phillips in the summer of 2015, I came to the realization that Mr. Phillips was satisfied with my knowledge and experience regarding tax preparation services. Mr. Phillips then decided to move forward with this new business and offered me the position of Operations Manager with Westfield Tax. In a face to face meeting, Mr. Phillips offered me a salary of $50,000 per year with a $5,000.00 bonus. I accepted this offer from Mr. Phillips and became the Operations Manager of Westfield Tax in July of 2015.

4. As part of my on-boarding process, Mr. Phillips had me complete and submit several employment forms that were labeled, "The Westfield Corporation." I was also provided an office, computer, and necessary office supplies. My office was located within an office suite that was occupied by The Westfield Corporation. The name on the office suite was "The Westfield Corporation" or words to that effect.

5. On one or more occasions I was paid with a check(s) from "The Westfield Corporation."

6. Mr. Phillips maintained operational control and day to day management of both The Westfield Corporation and Westfield Tax. Mr. Phillips hired me, fired me, set my pay rate, determined when I would be paid, set my work schedule, set my duties, and directed where I was to perform those duties. Likewise, Mr. Phillips directed the marketing and sales efforts of Westfield Tax, he directed and approved the locations we opened, he directed and approved how many tax preparers we hired, how much tax preparers would be paid (rate and method of payment), how many hours the tax preparers would work, where the tax preparers would work, and ultimately controlled the power to terminate tax preparers. Mr. Phillips controlled all the conditions of my employment and the employment of everyone else within Westfield Tax. Mr. Phillips maintained my

employment records and the employment records of everyone else within Westfield Tax.

  7. Mr. Phillips supervised my work. I regularly reported to Mr. Phillips regarding training of tax preparers, pricing schedules, and any other operational issues which he often questioned and ultimately approved.

  8. All expenses whether for marketing, staff, computer equipment, computer software, or any other expenses for Westfield Tax were approved by Mr. Phillips.

  9. I never received the salary promised by Mr. Phillips. During my over six (6) months of employment with Defendants, I received approximately $3,604.00 in compensation. The checks were issued to me by The Westfield Corporation; and "The Westfield Assisted Living Center," which is an assumed name of The Westfield Corporation.

  10. I was never paid more than $455.00 in any week during my employment with Defendants.

  11. During the first two (2) months of employment with Defendants, my regular schedule was from 10:00 a.m. to 7:00 p.m., Monday through Friday, plus two Saturdays per month. After then, I regularly worked six (6) days per week at ten (10) to twelve (12) hours per day. Mr. Phillips was aware of and approved my work schedule.

  12. I regularly worked fifty (50) to sixty (60) hours or more per week during my employment with Defendants. The vast majority of this work was performed in the offices of the Westfield Corporation. This is the same location where Mr. Phillips maintained his office, so he was aware of when I was working and how many hours I was working.

  13. Mr. Phillips is the sole owner of The Westfield Corporation and Westfield Tax.

On these facts, applying the economic-reality test, Defendants Westfield Corp. and Dr. Phillips were sufficiently involved in the operational and economic control of Westfield Tax &

8

Financial Management Service, LLC., thereby making them "employers" who are jointly and severally liable for FLSA violations allegedly committed by Westfield Tax & Financial Management Service, LLC.

B. Defendants failed to establish that Plaintiff was a salaried, exempt employee earning more than $455/week.

Under the FLSA's minimum-wage provision, an employer must pay an employee at least $7.25 per hour. 29 U.S.C. § 206(a)(1). The TMWA requires that employers pay employees the federal minimum wage, and expressly provides that its provisions "do not apply to a person covered by the [FLSA]." *See* TEX. LAB. CODE. ANN. § 62.151; *Chambers v. Sears Roebuck & Co.*, 428 Fed. Appx. 400, 425 (5th Cir. 2011).

The FLSA requires employers to pay time and a half for each hour that an employee works in excess of 40 hours, *see* 29 U.S.C. § 207(a), and creates a cause of action against employers that violate these requirements. *See* 29 U.S.C. § 216(b). "An employee bringing an action for unpaid overtime compensation must first demonstrate by a preponderance of the evidence: (1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due." *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014). If the plaintiff establishes a prima-facie claim, the burden shifts to the defendant to either establish that he is exempt from the FLSA's requirements, or otherwise come forward with evidence disproving the plaintiff's alleged damages. *Id.*

9

Defendants contend that Plaintiff was an exempt executive or administrative employee. Congress exempted certain classes of employees from FLSA coverage. *See Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349, 352 (5th Cir. 2015)("Certain employees, however, are exempt from the overtime requirements [of the FLSA]."). Exemptions are defined by the Secretary of Labor at 29 C.F.R. § 541.0 *et. seq.* Examples of exempt employees include workers who are employed in a bona fide executive or administrative capacity. *See* 29 U.S.C. § 213(a)(1)(exempting from § 207 "any employee employed in a bona fide executive, administrative, or professional capacity. . ."). The Department of Labor ("DOL") regulations define a "bona fide executive" employee as an employee:

> (1) Who is compensated on a salary basis at a rate of not less than $455 per week;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100 (2016).

"The executive exemption is conjunctive and accordingly, the employer who claims the exemption must meet each element for the exemption to apply." *Mohnacky v. FTS Intern. Servs., LLC*, No. 13-CV-246, 2014 WL 4967097, at *3 (W.D.Tex. Oct. 2, 2014).

To qualify as a bona-fide exempt administrative employee, the employee must (1) earn at least $455 per week; (2) primarily perform work directly related to the management or general

10

business operations of the employer or the employer's customers; and (3) exercise discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a).

The employer bears the burden to establish the applicability of an exemption under the FLSA. *Chatham v. Allstate Ins. Co.*, 465 F.3d 578, 584 (5th Cir. 2006). The question of how an employee spends his time working is a question of fact; but whether an employee's salary and duties ultimately satisfy an exemption is a question of law. *Zannikos*, 605 F. Appx at 352 (citing *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)). The FLSA's exemptions must be given a "fair reading" rather than being construed narrowly against the employer. *Encino Motorcars v. Navarro*, ___U.S.___, 138 S.Ct. 1134, 1142 (2018); *Carley v. Crest Pumping Technologies, LLC*, 890 F.3d 575, 579 (5th Cir. 2018).

Both exemptions apply only to employees making at least $455/week and compensated on a "salary basis" under § 541.600. Plaintiff argues that there is a genuine issue of material fact as to whether he was paid on a salary basis, and that he earned less than $455/week, which precludes either exemption. Defendants point to Plaintiff's deposition testimony that his salary for the year was supposed to be $50,000, therefore his weekly pay would have exceeded $455 per week. *See* Plaintiff's Deposition, Document No. 33-1 at 6. In contrast, Plaintiff, in his Affidavit, swore that he was never paid $455 or more per week during the time he was employed by Defendants, and that for the six months he worked for Defendants, he received approximately $3,604.00 in compensation. *See* Affidavit of Plaintiff, Document No. 34-1, ¶¶ 9, 10.[2] This is an average rate of $132.62 per week. Viewing the summary judgment evidence in the light most favorable to Plaintiff, Defendants

---

[2] Plaintiff's Complaint alleges that he received total compensation of $2023.00. (Document No. 1, ¶ 29. His Affidavit states that he received approximately $3,604.00 on compensation.

have not met their burden to prove that Plaintiff was paid on a "salary basis" exceeding $455/week, which is an essential element to establish both exemptions. Therefore, Defendants' motion for summary judgment on Plaintiff's FLSA/TMWA claim should be denied.

### C. Breach of Contract Claim

Defendants also move for summary judgment on Plaintiff's breach of contract claim. To establish a breach of contract claim under Texas law, a plaintiff must show: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Sport Supply Grp., Inc. v. Columbia Casualty Co.*, 335 F.3d 453, 465 (5th Cir. 2003); *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502, n. 21 (Tex. 2018). Defendants raise an affirmative defense: that the summary-judgment evidence shows that the purported employment contract was not supported by mutual consideration. According to Defendants, there was no contract with Plaintiff but a working relationship. Defendants point to the following testimony:

> Q. And this 54, 55,000 that you were–on the agreement, was that for a set time period?
>
> A. It was for the year.
>
> Q. For the year?
>
> A. That's correct.
>
> Q. Was it guaranteed to you whether you worked for a year or not?
>
> A. That's correct.
>
> Q. Whether you worked or not, you were going to get the 55,000?

>   A. That's correct.
>
>   Q. What would be the incentive–what was the incentive for you–for Westfield Tax Corporation to pay you 54 or $55,000 even if you didn't work a year?
>
>   \*        \*        \*
>
>   A. It's based on the numbers.
>
>   Q. Well, now, you just said it was regardless of how long you worked. now you're saying it was based on the numbers for you to get the amount of money?
>
>   A. No.
>
>   Q. Okay.
>
>   A. Regardless of what they made, my contract was–it was a hard copy contract. So, it was sealed regardless of whatever they were going to make because that was the agreement signed.
>
>   Q. Well, you just said it was based on the numbers.
>
>   A. Well, their numbers, whatever their numbers were; but at the end of the day, my contract was a hard contract. It wasn't flexible. It didn't bend or anything of that such. So, nothing was cut from it. Deposition of Plaintiff, (Document No. 33-1, at 6).

This testimony is ambiguous at best, and nothing short of confusing in both the questions and the answers. Defendants interpret Plaintiff's testimony to mean that there was a one-sided nature of the purported employment contract: that Plaintiff was to be paid $55,000.00 but was under no obligation to work. Therefore, they contend, his breach of contract claim fails for lack of mutual consideration. But the deposition testimony demonstrates that Plaintiff did not agree with Defendants' counsel's interpretation of his testimony. And in response to the motion, Plaintiff points

to his Affidavit, wherein he characterizes the actual employment arrangement quite differently than a "business relationship." He states that he was provided office space and began to work, often times more than forty hours per week, but was not compensated at the agreed rate of pay. The Affidavit further states:

> 3. As a result of my discussions with Mr. Phillips in the summer of 2015, I came to the realization that Mr. Phillips was satisfied with my knowledge and experience regarding tax preparation services. Mr. Phillips then decided to move forward with this new business and offered me the position of Operations Manager with Westfield Tax. In a face to face meeting, Mr. Phillips offered me a salary of $50,000 per year with a $5,000.00 bonus. I accepted this offer from Mr. Phillips and became the Operations Manager of Westfield Tax in July of 2015.
>
> 9. I never received the salary promised by Mr. Phillips. During my over six (6) months of employment with Defendants, I received approximately $3,604.00 in compensation. The checks were issued to me by The Westfield Corporation; and "The Westfield Assisted Living Center," which is an assumed name of The Westfield Corporation.
>
> 10. I was never paid more than $455.00 in any week during my employment with Defendants.
>
> 11. During the first two (2) months of employment with Defendants, my regular schedule was from 10:00 a.m. to 7:00 p.m., Monday through Friday, plus two Saturdays per month. After then, I regularly worked six (6) days per week at ten (10) to twelve (12) hours per day. Mr. Phillips was aware of and approved my work schedule.
>
> 12. I regularly worked fifty (50) to sixty (60) hours or more per week during my employment with Defendants. The vast majority of this work was performed in the offices of the Westfield Corporation. This is the same location where Mr. Phillips maintained his office, so he was aware of when I was working and how many hours I was working. (Document No. 34-1).

Under Texas law, a contract must be supported by consideration to be enforceable. *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 659 (Tex. 2006). "It is well-settled in Texas that consideration may take the form of a benefit to the promissory or a detriment to the promisee." *Passant v. Jackson Nat. Life Ins. Co.*, 52 F.3d 94, 97 (5th Cir. 1995); *N. Natural Gas Co. v. Conoco, Inc.* 986 S.W.2d 603, 607 (Tex. 1998). Lack of consideration for a contract is an affirmative defense to its enforcement. As such, the burden of proof is on the party alleging the lack of consideration. *McLernon v. Synergy, Inc.*, 347 S.W.3d 315, 335 (Tex. App.–Houston [14th Dist.] 2011, no pet.). Lack of consideration occurs when the alleged contract fails to impose obligations on both parties. *City of The Colony v. North Tex. Mun. Water Dist.*, 272 S.W.3d 699, 733 (Tex. App.–Fort Worth 2008, pet. dism'd). In addition, a want or lack of consideration is different from a failure of consideration. A lack of consideration occurs when a contract, at its inception, does not impose obligations on both parties. Without a mutuality of obligation, a contract is unenforceable. *Burges v. Mosley*, 304 S.W.3d 623, 628 (Tex.App.-Tyler 2010, no pet.). A failure of consideration occurs when, because of some supervening cause arising after the contract is formed, the promised performance fails. *Id.* Here, the summary judgment evidence does not support Defendants' argument that there was no contract because there was no mutual consideration. The purported contract imposed obligations on both parties, i.e, Plaintiff was to build the business and in return, be paid $50,000 and a $5,000 bonus as the end of tax season. Plaintiff seeks to enforce Defendants' promise to pay him a set yearly salary plus a bonus for work he actually performed. Under these circumstances, the contract as alleged is a valid contract supported by mutual consideration, and as such, the defense of lack of mutual consideration does not apply. Viewing the summary judgment

evidence in the light most favorable to Plaintiff, Defendants' Motion for Summary Judgment on the breach of contract claim should be denied.

V. Conclusion and Recommendation

Because the summary judgment evidence shows that Defendants either failed to meet their burdens of proof on essential elements of their defenses or that there exist genuine issues of material fact precluding judgment in their favor, Defendants' Motion for Summary Judgment should be denied. The Magistrate Judge therefore

RECOMMENDS that Defendants' Motion for Summary Judgment (Document No. 33) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); Ware v. King, 694 F.2d 89 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen-day period bars an aggrieved party from attacking conclusions of law on appeal. *See Douglass v. United Serv. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Court Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 19th day of August, 2019

Frances H. Stacy
FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE